Robert V. H. Harned v. Commissioner. Warren W. York v. Commissioner.
Harned v. Commissioner
Docket Nos. 2884, 2885.
United States Tax Court
1944 Tax Ct. Memo LEXIS 28; 3 T.C.M. (CCH) 1253; T.C.M. (RIA) 44385; November 29, 1944
*28 1. Petitioners were members of a partnership which in the year 1940 was a dealer in securities and entitled to use inventories in determining gain or loss in its business. During the taxable year the partnership advanced money to purchase preferred and common shares of a packing company then being organized with the hope and expectation that it could be operated successfully so it would be possible to raise capital from the public sufficient to acquire the plant and equipment of a predecessor corporation which had failed. The stock of the newly organized corporation which was paid for with partnership funds was issued in the names of the individual partners and the amount of the partnership funds so used was charged to the capital accounts of the individual partners. The enterprise proved a failure and long before the end of the year the stock was entirely worthless. At the end of the year the shares of stock were transferred from the individual partners to the partnership and the cost thereof was taken as an ordinary loss on the partnership return. Held, the shares of stock were the property of the individual partners and not of the partnership. Held, further, such shares *29 constituted capital assets in the hands of the individual partners and are subject to the capital loss limitations prescribed by section 117, I.R.C.
2. Amount of deduction for traveling and entertainment expenses incurred and paid by one of the petitioners in the course of his business and not reimbursed to him by the firm determined, and deduction allowed for the amount so determined under the provisions of section 23 (a) (1), I.R.C.
Temple W. Seay, Esq., for the petitioners. William H. Best, Jr., Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion These proceedings have been consolidated. In Docket No. 2884, the Commissioner has determined deficiencies in income tax against petitioner, Robert V. H. Harned, of $50.68 for the year 1940 and $258.35 for the year 1941. The deficiency for 1940 is based upon one adjustment made by the Commissioner as follows "(a) Income from partnership $810.57." By an appropriate assignment of error petitioner contests this adjustment. Although the petition contains an assignment of error as to the deficiency determined by respondent for the year 1941, this assignment of error was abandoned at the hearing and the deficiency for *30 1941 is no longer contested by petitioner Harned. In Docket No. 2885, the Commissioner has determined deficiencies in income tax against petitioner, Warren W. York, of $3,701.72 for the year 1940 and $2,097.58 for the year 1941. The deficiency for 1940 is due to several adjustments made by the Commissioner, only two of which are now contested. Those two adjustments are: "(a) Income from partnership $6,093.17; (d) Other deductions $650.00." The correctness of both of the foregoing adjustments is contested by the petitioner in appropriate assignments of error. The petition contains assignments of error which contest the adjustments made by the Commissioner in his determination of the 1941 deficiency. Petitioner now concedes that these adjustments were correct except one. As to this latter adjustment respondent concedes that he was in error. Therefore there remain no contested issues between the parties for 1941. Findings of Fact Petitioners Robert V. H. Harned and Warren W. York both reside in Allentown, Pennsylvania. Their returns for the periods here involved were filed with the Collector of Internal Revenue at Philladelphia, Pennsylvania. Petitioners were during the years 1939, *31 1940 and 1941, members of the copartnership of Warren W. York & Company, Allentown, Pennsylvania, with branch offices in Scranton, Harrisburg and Philadelphia. The partnership of Warren W. York & Co. is sometimes hereafter referred to as the partnership. The partnership is engaged as a dealer in securities, consisting of underwriting, distributing, participating in issues, purchase and sale of bonds and stocks of public utilities, railroads, industrial concerns, over-the-counter market sales to customers, and the purchase and sale of securities for customers' accounts on listed and unlisted markets. C. Vaughn Converse was a member of the copartnership during 1940 and until March, 1941. The interests of the partners in the partnership profits during the taxable year 1940 and until the retirement of Converse were: York, 90 percent; Harned, 5 percent and Converse, 5 percent. Those interests pertained merely to the division of profits and bore no relation to their capital interests. As a dealer in securities the partnership employs the inventory method for determining and reporting the partnership profits for tax purposes. It is a member of the Philadelphia Stock Exchange and as such *32 trades under the rules of that Exchange. The underwriting phase of the partnership business involves the making of outright purchases of securities for resale or entering into agreements with others to distribute securities for a given consideration under guarantee of satisfactory completion of the transaction. These underwriting transactions vary widely as to terms and conditions, depending to a great extent upon whether the issue is large or small and whether there is a wide or narrow market. The purpose of such transactions is that profit will result through the sale of the securities and provide the participating firm with a continuing interest in the sale of any subsequent issues of securities for the same corporation, also identifying the participating firm with the market for the securities. In the latter part of 1939 the partnership was approached by a group interested in furthering a business maintained by Paul Schafer and in resuming the manufacture of what had been a well-known meat packing product in that vicinity, formerly manufactured by the Schafter Packing Company which was then closed down. The group was desirous of raising $50,000 through the underwriting of its *33 capitalization, which they considered would provide sufficient funds to purchase the properties of that company and afford adequate working capital. Warren W. York, for the partnership, made an investigation of the defunct concern and found that the name of Schafer was well known and that their principal product, "Schafer Bologna", had been in considerable demand for a great many years past; also that the company, which had represented an investment of $250,000, had failed due to mismanagement and had gone into the hands of the mortgage holder, Easton Dollar Savings & Trust Company which was later absorbed by the Easton Trust Company. He also found that the Easton Trust Company was anxious to dispose of the company in order to liquidate this mortgage trust certificate obligation at a very low figure in relation to its cost. It was decided that a new corporation should be organized. After reviewing the matter and being satisfied that that type of security was not such as could be offered to the clientele of the partnership at that time, the three partners decided to invest some capital to organize the business and give the individuals concerned an opportunity to demonstrate whether *34 the business could be conducted successfully before it endeavored to obtain the desired capital from the public to purchase the property from Easton Trust Company. Accordingly, Schafter Packing Company, Inc., sometimes hereafter referred to as Schafer, was organized under the laws of the State of Pennsylvania with an authorized capitalization of 11,000 shares, divided into 1,000 shares of preferred stock, par value $50 a share, and 10,000 shares of common stock, par value $5 per share. The names and addresses of the incorporations and the number and class of shares subscribed by each were given in a statement appended to the charter as follows: Name
Address
No. and class of shares
Warren W. York
Allentown, Pa.
120 - Preferred
510 - Common
Melvin M. Ginter
Easton, Pa
140 - Common
Paul G. Schafer
Easton, Pa.
140 - Common
Robert B. Weidner
Easton, Pa.
140 - Common
Karl Y. Doneker
Allentown, Pa.
70 - Common
Schafter Packing Co., Inc. on April 1, 1940, issued to Warren W. York 80 shares of its preferred stock; to Robert V. H. Harned 10 shares of preferred stock; to C. Vaughn Converse 10 shares of preferred stock; to Warren W. York 408 shares of common stock; *35 to C. Vaughn Converse 51 shares of common stock; to Robert V. H. Harned 51 shares of common stock. Also on the same date Schafer issued to the other incorporators named in the charter as given above the shares of common stock therein specified. Between January 15, 1940, and February 23, 1940, the partnership issued its checks in the total sum of $5,000 to Schafer in payment for the preferred stock issued to York, Harned and Converse. The common stock of Schafer was issued as a bonus to the preferred stockholders. Upon the issuance of the aforesaid checks, the personal accounts of Warren W. York, Robert V. H. Harned and C. Vaughn Converse were debited on the books of Warren W. York & Co., charging them personally with the cash paid Schafer for said stock. The ordinary securities which the partnership carried in its inventory for sale to customers, consisting of more than 100 kinds of securities, were charged on the partnership books of Warren W. York & Co. to the partnership itself and were not charged against the accounts of the individual partners. Between February 28, 1940 and June 20, 1940, Warren W. York, Robert V. H. Harned and C. Vaughn Converse loaned to Schafer the total *36 sum of $6,000. These loans were paid for by checks issued by Warren W. York & Co. but the amounts so loaned were charged on the partnership records against the capital accounts of the individual partners. These loans were charged off by the individual partners as bad debts in their 1941 individual income tax returns. Schafer became insolvent prior to December 31, 1940, and both the preferred and common stock thereupon became worthless. On December 30, 1940, the common and preferred stock certificates which had been issued to Warren W. York, C. Vaughn Converse and Robert V. H. Harned by Schafer Packing Co., Inc. were signed in blank by said named persons and were turned in to Karl Y. Donecker, an officer of Schafer and were transferred on the books of Schafer as follows: "To Warren W. York & Co. - preferred stock - certificate No. 4 - 100 shares To Warren W. York & Co. - common stock - certificate No. 8 - 510 shares" Warren W. York & Co. included Schafer Packing Co., Inc., stock in its 1940 inventory as of December 30, 1940, as having no value. The partnership would not have been permitted by the Philadelphia Stock Exchange of which it was a member to carry the Schafer Packing *37 Co., Inc. stock on its records as an asset and, therefore, would not be permitted to list the same as a security in its inventory list because it had no market value or no collateral value and it represented only a venture in a prospective business. The Schafer Packing Co. Inc. capital stock which was issued to Warren W. York, Robert V. H. Harned and C. Vaughn Converse was the individual property of the said persons and was not the property of Warren W. York & Co., a partnership. The losses incurred by petitioners Robert V. H. Harned and Warren W. York in the taxable year 1940 by reason of Schafer Packing Co., Inc. capital stock becoming worthless during the taxable year were short-term capital losses as defined by section 117 (a) (3) of the Internal Revenue Code and were, therefore, subject to the limitations prescribed by the Internal Revenue Code, as amended, for the taxable year 1940. The nature of the business of the partnership of which the petitioners are partners requires, as it did in the taxable year 1940, extensive travel on the part of petitioner York, visiting branch offices, the financial centers of the United States and various other cities and towns where the interests *38 of his business are affected. In 1940 he customarily made such trips to nearby cities by automobile and the more distant trips by train. For the most part his firm reimbursed him for traveling expenses or advanced funds to him for the purpose. He did not make a practice at that time of keeping a very close account of his expenditures. Sometimes funds that were advanced for a given trip were found to be insufficient. Additional and unexpected expenses having arisen through the necessity for entertaining of branch office personnel and customers, he either used his personal funds for out-of-pocket expenses, or if none were available, cashed his personal checks and used the proceeds for the purpose. Checks cashed and so used in the taxable year 1940 aggregated $246.38, for which he was not reimbursed by the partnership. Opinion BLACK, Judge: By reason of concessions made at the hearings there are now no issues as to either of the petitioners for the year 1941. The issues raised by the pleadings for the year 1940 are as follows: (1) Did the partnership, Warren W. York & Co., realize a partnership loss in the taxable year 1940 by reason of Schafer Packing Co., Inc., capital stock becoming *39 worthless during said year or was such loss, that of the individual partners? (2) In the event that the partnership did realize a partnership loss in the taxable year 1940 by reason of Schafer Packing Co., Inc., capital stock becoming worthless during said taxable year 1940, was such loss an ordinary loss or was it a short-term capital loss? (3) Did the petitioner, Warren W. York, incur deductible traveling and entertainment expenses in the amount of $650 or any part thereof during the taxable year 1940 for which he was not reimbursed by the partnership? Issues (1) and (2) are common to both petitioners. Issue (3) applies only to petitioner, York. In arriving at an answer to issue (1) we have reached the conclusion after a careful review of all the evidence that the shares of stock of Schafer, which upon its organization early in 1940 were issued to Warren W. York, Robert V. H. Harned and C. V. Converse, were owned by them individually and not by the partnership as such. If we find that the stock was owned by the individuals named and not by the partnership we do not understand petitioners to contend that the losses involved were not shortterm capital losses under the provisions *40 of section 117 I.R.C. and limited by the provisions of that section. The applicable provisions of section 117 are printed in the margin. [1]
*41 There are several circumstances disclosed by the evidence which have caused us to reach the conclusion we have just stated. In the first place the partnership was a member of the Philadelphia Stock Exchange and petitioner York, himself, testified that inasmuch as the venture respecting Schafer was speculative and the stock had no fair market value when issued, it was against the rules of the Philadelphia Stock Exchange for the partnership to report the stock as an asset. "Therefore," said he in effect, "for this and other reasons the stock was taken out in the names of the individual partners and carried on the books of the partnership in that manner." In the next place, the checks of the partnership which were issued in payment of the stock were charged to the individual partners' capital accounts. This was at least unusual. Stocks and bonds which were purchased by the partnership for resale to customers were not charged in this manner. After the shares of stock were subscribed for and purchased in the foregoing manner, $6,000 in cash was loaned by York, Harned and Converse to Schafer. The cash to make these loans was furnished by the partnership and charged to the individual *42 partners just as the cash to pay for the stock was furnished and charged. Petitioners concede that these loans aggregating $6,000 were the loans of the individual partners and not loans of the partnership. In 1941 when Schafer was finally liquidated and a small payment was made to its creditors, the individual partners, after receiving their small payments, charged off the balance of their respective loans to Schafer as a bad debt on their individual income tax returns. Another circumstance which we think supports the Commissioner's determination is that the stock in question was issued in the following proportions: York, 80 percent; Harned, 10 percent; and Converse, 10 percent, whereas their interest in the partnership earnings were: York 90 percent; Harned 5 percent; and Converse 5 percent. Petitioner York testified at the hearings that the purchase of the stock of Schafer was considered a venture of the partnership from the outset, but was not reflected on the books of the firm in that manner for reasons which he gave. These reasons may be summarized as follows: (1) The shares of stock were issued in the names of the individual partners in accordance with the practice of the *43 partnership in carrying stock certificates in the names of nominees rather than in the name of the firm to facilitate endorsement and delivery of certificates rather than empowering individuals to sign the name of the firm; (2) In respect to the Shafer Packing Company, Inc. underwriting, it was issued in the names of the individual partners in order, if necessary, to qualify both as to the requirement for having sufficient incorporators to form a corporation and to qualify all of the partners to act as members of the Board of Directors of the new corporation, which could not be readily accomplished if the stock were issued in the name of the firm; and (3) The type of venture was such that the securities had no market at the outset, had no collateral value, hence was not a security that could be reported as an asset in the partnership statement of conditions to the Philadelphia Stock Exchange. We have given careful consideration to the testimony of petitioner York, summarized as thus above, but have concluded for reasons which we have already stated, and others which are in the record, that the determination of the Commissioner with respect to the ownership of this Schafter stock should *44 not be disturbed. As we have already stated, there seems to be no dispute but that the loss was a shortterm capital loss within the meaning of section 117, if the stock in question was individually owned by York, Harned, and Converse. It is only in case we hold the stock was owned by the partnership that there is a controversy as to whether the loss resulting from the stock becoming worthless in 1940 was a capital loss as respondent contends, or was an ordinary loss as petitioners contend. It therefore really becomes unnecessary to decide issue (2). We think it well, however, that we should point out that it is our view that even though we should be in error in holding that the shares of stock in question were owned by the individuals to whom issued and that such shares were in fact owned by the partnership, we think the decision would still have to be in favor of the Commissioner. Clearly the shares of stock were capital assets and subject to the limitation on capital losses, unless they were "stock in trade of the taxpayer, or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held *45 by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." Petitioners appear to argue on brief, at least that is the construction we give their argument, that if a taxpayer is a "dealer in securities", using inventories in determining gain or loss in the purchase and sale of securities for the taxable year, as did petitioner, the taxpayer is entitled to inventory all securities on hand at the end of the year, regardless of how, and for what purpose acquired. We do not subscribe to the correctness of that argument. We think Hammitt v. Commissioner, 79 F.2d 494, is to the contrary. Cf. Leach Corporation v. Blacklidge, 23 F. Supp. 622. It is clear in the instant case that even if we assume that the shares of stock in question were acquired as the property of the partnership, they were not acquired for immediate resale to customers. Petitioner York testified that the shares of stock when purchased had no market value and could not have been used as collateral, and were not the class of securities which the partnership would offer for sale to its customers. His testimony was *46 to the effect that the purchase of the shares was made for the purpose of getting the new Schafer company going and to see whether it could be developed into a profitable enterprise, so that later the partnership could underwrite its securities and offer them for sale to its customers. The situation depicted by petitioner York in his testimony is not unlike that upon which the Court commented in Leach Corporation v. Blacklidge, supra, as follows: It is true that plaintiff intended to resell securities purchased by it, but not as a merchant sells his goods to those who come to his place of business to buy. On the contrary, the plan was to buy and then hold securities until there was an opportunity to sell at a profit. It bought securities of concerns which were in the formative stage "to be held until they were ready to be distributed, because by that day the concern was a going concern with earnings and assets and we were justified in distributing them to the public." That is not merchandising, that is investment or speculation. * * * So, for reasons stated above (we conclude that even though it should be held that the shares of stock in Schafer were *47 the property of the partnership, the shares did not constitute "stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year." Nor do we think, even though not proper to be included in inventory, that the shares of stock were "property held by the taxpayer primarily for sale to customers in the ordinary course of its trade or business." As we have already stated, petitioner York testified that the shares of stock at the time they were acquired had no market value and could not be used as collateral for loans. "Therefore," testified York, "they were not of a kind that the partnership would offer for sale to its customers." York further testified that the shares of stock never became of the kind that the partnership would offer for sale to its customers because in about 60 days time it became evident that Schafer would prove a failure and its shares of stock of no value. Therefore, even if it be assumed that the partnership was the owner of the shares of stock, it is clear that at no time during the taxable year were the shares "property held by the taxpayer primarily for sale *48 to customers in the ordinary course of its trade or business." On this issue we sustain respondent. Issue (3), applicable only to petitioner York, requires but little discussion. In petitioner York's income tax return for 1940 he claimed a deduction of $650 as representing expenditures for "entertainment, traveling expense - not reimbursed by firm." This deduction the Commissioner disallowed in his determination of the deficiency for 1940. The Commissioner's determination is presumably correct and the burden of proof is on petitioner to prove that he is entitled to the deduction claimed. We hold that petitioner has discharged this burden to the extent of $246.48 of the deduction claimed. The evidence as to the balance is too indefinite and uncertain to justify us in overturning the determination of the Commissioner. In a recomputation under Rule 50, petitioner York should be allowed as a deduction in the year 1940, for traveling expenses and entertainment not reimbursed to him by the partnership, the sum of $246.48. The Commissioner is sustained as to the balance of the $650 involved in this issue. In Docket No. 2884 decision will be entered for respondent. In Docket No. 2885 *49 decision will be entered under Rule 50. Footnotes
1. SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions. - As used in this chapter - (1) Capital Assets. - The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1); * * * * *
(3) Short-Term Capital Loss. - The term "short-term capital loss" means loss from the sale or exchange of a capital asset held for not more than 18 months, if and to the extent such loss is taken into account in computing net income; * * * * *
(d) Limitation on Capital Losses. - * * * * *
(2) Other Taxpayers. - In the case of a taxpayer other than a corporation, short-term capital losses shall be allowed only to the extent of short-term capital gains.↩